**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **AMALIA MAZZOLIN, as Trustee of the AMALIA MAZZOLIN 1998 TRUST B, and THE MAZZOLIN FAMILY LIMITED PARTNERSHIP, An Illinois Limited Partnership,** | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 11 C 953 ) |
| **LEHMAN BROTHERS REAL ESTATE FUND III, L.P. a Delaware Limited Partnership,** | ) Judge Rebecca R. Pallmeyer ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, a trustee and an Illinois limited partnership, originally filed this action in the Circuit Court of Cook County seeking rescission of their subscription agreements for partnership interests in the defendant-partnership, Lehman Brothers Real Estate Fund III, L.P. ("LBREF"). Plaintiffs allege that they made their decision to invest in what they thought were portfolios of promising real estate holdings based on false and misleading information furnished by the Defendant in a private placement memorandum, in violation of Illinois law. Defendant removed the case to this court, arguing that jurisdiction is proper because this case is "related to" the Chapter 11 bankruptcy of Lehman Brothers Holdings Inc. ("LBH"). The parties filed cross-motions: Defendant sought venue transfer to the United States District Court for the Southern District of New York; Plaintiffs asked this court to remand the case to state court, arguing that removal was improper. On September 23, 2011, this court issued an order directing Defendant to show cause within fourteen days why Plaintiffs' motion to remand should not be granted.

On October 7, 2011, Defendant filed its response to this court's show cause order. That same day, the court stayed its September 23 remand order to allow consideration of the

Defendant's submissions. For the reasons stated below, Defendants have not satisfied the court that this case was properly removed. The court therefore orders this case remanded to state court.

## **BACKGROUND**

This opinion assumes familiarity with the facts set forth in this court's previous disposition. *See Mazzolin v. Lehman Bros. Real Estate Fund III, L.P.*, 11 C 953, 2011 WL 4435649 (N.D. Ill. Sept. 23, 2011). In that opinion, the court explained its conclusion that Defendant had not established jurisdiction under the Seventh Circuit's more limited definition of "related to" federal jurisdiction pursuant to 28 U.S.C. §§ 1452(a) and 1334(b). The court observed that Defendant's factual assertions appeared to conflict with the language of LBREF's partnership agreement, which lists Lehman Brothers Real Estate Associates III, L.P. ("LBREA")—not LBH, as Defendant contended—as LBREF's general partner. *Id.* at *2. As a result, Defendant had not shown how LBREF's unspecified relationship with LBH stood to affect the property in LBH's estate. *Id.* at *4. The court also rejected Defendant's argument that LBH's "economic stake" in LBREF was sufficient to establish federal jurisdiction, concluding that such an interpretation would extend federal bankruptcy jurisdiction to any claim by a third party against a non-debtor in which the debtor has an investment interest. *Id.*

The court also rejected Defendant's argument that an insurance policy covering LBREF and owned by LBH is sufficient to establish federal bankruptcy jurisdiction. The court noted that LBREF had not filed a copy of the insurance agreement itself. Without that document, the argument that a judgment against LBREF would affect property in LBH's estate was too speculative to overcome the presumption in favor of Plaintiffs' choice of forum. *Id.*

Defendant's response to the show cause order provides additional evidence concerning the Venture Capital Asset Protection Policy. Defendant continues to withhold the insurance policy itself; according to Defendant, the policy addresses situations not relevant in this case, and releasing the policy in a public filing "could influence the formulation of claims unrelated to the instant action." (Def.'s Resp. to Ct.'s Request to Show Cause that Remand is Not Appropriate (hereinafter "Def.'s

Resp.") ¶ 2 n.1.) Instead, Defendant submitted a letter from Stephen Davidson, attorney for the firm representing the claims manager for Vigilant Insurance Company, the issuer of the policy. (Letter from Stephen P. Davidson to Rick Lusk of 8/11/11, Ex. 2 to Def.'s Resp.) The letter identifies LBH as the insured and confirms coverage and the advancement of defense costs for this litigation, subject to Vigilant's reservation of rights. (*Id.* at 1.) Davidson's letter states that LBREF "meets the definition of Organization" under the policy and confirms that pursuant to the "'Organization Liability Coverage Endorsement,' Vigilant agreed to pay on behalf of the Organization all Loss for which the Organization becomes legally obligated to pay on account of any Claim for a Wrongful Act, subject to other Policy terms and conditions." (*Id.* at 2-3.)

Defendant also submitted an affidavit from the recipient of that letter, Rick Lusk of LBH's Insurance Risk Management division. (Lusk Aff., Ex. 1 to Def.'s Resp.) The affidavit explains that based on his "personal knowledge and on due investigation," he understands the policy to identify "only the specific fund platform limited partnership entity," in this case Lehman Brothers Real Estate Partners III, L.P., "with the idea that, coverage would then extend above, laterally, and below the fund platform limited partnership entity." (*Id.* ¶¶ 1, 7.) Under this rationale, LBREF is covered under the policy's extension of coverage to "any feeder fund, parallel fund, employee fund or co-investment fund of any pooled investment vehicle identified." (*Id.* ¶ 7) Lusk further declares that "[a]s LBREF III properly draws upon the VCAP Policy in connection with this action, an asset of the Lehman Brothers estate is financially affected as the policy is depleted." (*Id.* ¶ 9.) Notably, neither the letter nor the affidavit state that the policy covers *LBH* for claims of indemnity that might be brought against it due to its relationship with the affiliated organizations that are covered by the policy. At any rate, any liability that might flow to LBH remains speculative because Defendant has not yet explained the relationship between LBH and LBREF.

## DISCUSSION

As the court noted in its previous disposition, federal bankruptcy jurisdiction extends to "all civil proceedings arising under [the federal Bankruptcy Code], or arising in *or related to* cases under

[the Bankruptcy Code]." 28 U.S.C. § 1334(b) (emphasis added). The Seventh Circuit has "interpreted 'related to' jurisdiction narrowly 'out of respect for Article III' . . . as well as to prevent the expansion of federal jurisdiction over disputes that are best resolved by state courts." *In re FedPak Sys., Inc.*, 80 F.3d 207, 214 (7th Cir. 1996) (quoting *Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir. 1989)). Specifically, a case is "related to" a bankruptcy proceeding when the resolution of the case is "likely to affect the debtor's estate." *In re Heath*, 115 F.3d 521, 524 (7th Cir. 1997). "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).

Defendant contends that because the insurance policy issued to LBH will be used to fund the litigation and pay any resulting damages, this litigation affects the debtor's estate by depleting the funds available under the policy. Defendant sees support for this argument in this court's observation that "it is well-established that 'insurance contracts in which the debtor has an interest at the time the petition is filed constitute property of the estate.'" *Mazzolin*, 2011 WL 4435649, at *4 (quoting *In re Stinnett*, 465 F.3d 309, 312 (7th Cir. 2006)). Insurance policies are indeed property of the debtor's estate. It does not follow, however, that proceeds of those policies are also property of the estate.

LBH, the debtor, purportedly owns the insurance policy, but the proceeds of the policy appear to be for the benefit of affiliated partnerships like LBREF, a separate legal entity. In this respect, the facts of this case are most analogous to cases where a debtor-corporation has purchased insurance policies providing liability coverage to directors and officers. In *In re marchFIRST, Inc.*, for example, several shareholders of an internet consulting and information technology company had sued certain of its directors and officers, alleging violations of federal securities laws. 288 B.R. 526, 528-29 (Bankr. N.D. Ill. 2002). The directors and officers were covered by an insurance policy maintained by the company totaling $50 million, a policy which also

provided indemnification coverage to the company. *Id.* Once the company filed for Chapter 11 bankruptcy, the Trustee, who also brought suit against the directors and officers, sought to enjoin the shareholders' suit as a violation of the automatic stay, arguing that the proceeds of the insurance policy was property of the estate. *Id.* at 529. The bankruptcy court, however, rejected the Trustee's argument:

> There is no question that the policies themselves are estate property. There is authority to support the argument that the proceeds of a directors' and officers' liability insurance policy are also property of a corporate debtor's estate. *In re Minoco* [*Grp.*] *of Cos., Ltd.*, 799 F.2d 517 (9th Cir. 1986); *In re Sacred Heart Hosp. of Norristown*, 182 B.R. 413 (Bankr. E.D. Pa. 1995); *In re Circle K Corp.*, 121 B.R. 257 (Bankr. D. Ariz. 1990). There is also authority to the contrary. *In re Louisiana World Exposition*, 832 F.2d 1391 (5th Cir. 1987); *In re CHS Electronics, Inc.*, 261 B.R. 538 (Bankr. S.D. Fla. 2001); *In re Daisy Systems Sec. Litig.*, 132 B.R. 752 (N.D. Cal. 1991).
> This Court agrees that the proceeds are not property of the estate. . . . Even defense funds are not the property of the insured until agreement by the insurer or a finding by the Court. When an insurer pays for the defense of an action against the directors and officers, it does so with a reservation of its rights. No one has a property interest in the proceeds of the insurance policies unless and until there is a judgment requiring that the insurers issue payment. Any property interest in the proceeds has not yet matured and may never mature.

*Id.* at 529-30. Thus, the court concluded that the shareholders' suit did not violate the automatic stay because the insurance proceeds were not property of the estate.

*In re marchFIRST* is persuasive. This court concludes that the proceeds of the Policy are not property of LBH's estate for purposes of determining whether this litigation will have a likely effect on LBH's estate. Just as in that case, proceeds of an insurance policy held by a debtor will pay the litigation expenses of, and potentially any judgment against, a non-debtor. Here, as in *marchFirst*, the insurance company is advancing defense costs subject to a reservation of rights. It is not apparent that proceeds from the policy will ever become property of LBH's estate.

The *marchFIRST* court nevertheless concluded that the shareholders' suit was sufficiently "related to" the company's bankruptcy to merit an injunction pursuant to § 105(a) of the Bankruptcy Code. *Id.* at 532. That provision authorizes the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. §

105(a). The bankruptcy court concluded that the shareholders' claim was sufficiently related to the company's bankruptcy. The court noted that the company had agreed to indemnify its directors and officers and that the Trustee himself had also brought suit against the directors and officers. Thus, in the event that the insurance coverage was exhausted, the debtor would be obligated to indemnify its directors and officers from funds in the debtor's estate. *In re marchFIRST*, 288 B.R. at 532. Also, because the Trustee and the shareholders had both filed suit against the directors and officers, any judgment for the shareholders might affect the funds available to pay a judgment for the debtor's estate. *Id.*[1]

Those factors do not appear to be present here. It is not clear that if the funds available through the policy are exhausted, LBH would be obligated to pay the difference in the same way that marchFIRST agreed to indemnify its directors and officers. Indeed, in its response to the order to show cause, Defendant offered no evidence about the relationship between LBH and LBREF that would support an argument that LBREF, or any other entity covered by the policy, would have an indemnification claim against LBH in case of an insurance shortfall. In fact, the duty to indemnify appears to run in the opposite direction in this case. The partnership agreement provides that the partnership will indemnify "the General Partner and its Affiliates." (LBREF Amended and Restated

---

[1] The court observed:

> Here, a suit between third parties will affect the orderly administration of the estate. If the shareholders obtain a judgment against the directors and officers, the insurers will either make a payment to the plaintiffs or deny coverage. If coverage is denied, the Trustee and the shareholders will be in pursuit of mostly the same assets of mostly the same individuals. If the insurers agree to pay the shareholders, the amount that the Debtors may be obliged to indemnify the directors and officers will be diminished. However, since the funds available to the directors and officers to pay a judgment are the same funds available to the Debtors to indemnify them, a shortfall of funds would affect the administration of the estate. Furthermore, because the Defendants have not delineated a dollar figure for damages in their complaint against the directors and officers, a judgment obtained by the Defendants in the District Court Action has the potential effect of leaving no funds available to pay a judgment obtained by the Trustee in the Trustee Action.

*Id.* at 532 (footnote omitted).

Agreement of Limited Partnership ¶ 6.5, Ex. 4 to Def.'s Mem. in Support of Its Mot. to Transfer.) Furthermore, LBH is not suing LBREF for similar claims, as was the case in *In re march FIRST*. Thus, the connection between the insurance policy and property of LBH's estate is more attenuated in this case than in *In re marchFIRST*. It is not apparent that LBH would be entitled to the proceeds of the policy or would be subject to suit for a shortfall in coverage. The court concludes that Defendant has not met its burden of showing that the insurance proceeds are property of LBH's estate or that this litigation will have a likely effect on LBH's estate.

## CONCLUSION

For the reasons discussed herein, Plaintiffs' Motion for Remand [16] is granted. Defendant's Motion to Transfer [6] and Motion to Dismiss [25] are stricken as moot.

ENTER:

Dated: January 25, 2012

_____
REBECCA R. PALLMEYER
United States District Judge